IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI

JASON JORDAN et al.                                                                PLAINTIFFS

v.                                                              CAUSE NO.: 1:13cv195 LG-JMR

PREMIER ENTERTAINMENT BILOXI, LLC
d/b/a HARD ROCK HOTEL & CASINO BILOXI et al.          DEFENDANTS

---

**AFFIDAVIT OF JOSHUA HAMILTON**

---

PERSONALLY appeared before me, the undersigned authority in and for the State aforesaid, the within named Joshua Hamilton, who after having been by me first duly sworn, deposed and stated as follows:

1. I am duly authorized to make this Affidavit on behalf of my Motion for Summary Judgment. At all times mentioned herein, I was a certified law enforcement officer for the City of Biloxi. As such, I have personal knowledge of the matters herein referred to.

2. I was one of the law enforcement officers who responded to the Hard Rock Casino on or about November 27, 2011, at or about 2:37 a.m. after being called to assist with a fight in the Ledge nightclub.

3. The Ledge had closed for business and a large number of patrons who had been in the nightclub were exiting through the foyer where the arrest of Jason Jordan was taking place. I was forced to wade through the patrons milling around, gawking, standing as they exited the Ledge walking by Jason Jordan. The smell of alcohol was noticeable and I assumed many of the unknown patrons had been drinking alcoholic beverages and that glasses and bottles may be nearby or in their possession.

4. When I arrived in the foyer area outside the Ledge nightclub, Officer Franovich, Officer Hilliard were attempting to handcuff Jason Jordan. I witnessed Jason Jordan resisting my fellow officers' efforts to get his hands behind his back so he could be handcuffed. Therefore, I removed the cartridge from my taser and delivered a "drive stun" to Jordan's upper back between the should blades. Jordan stopped resisting, and he was handcuffed. No one else utilized a taser on Mr. Jordan.

5. We were surrounded by a crowd of people that could be excitable and get agitated. We felt the need to get Jason Jordan away from the foyer area and out of the Casino as quickly as we could. This situation could have become dangerous to us as well as to Mr. Jordan.

6. My fellow officers got Mr. Jordan off the floor and told him to walk, but he refused to support himself and continued yelling profanities.

7. They had to physically carry Jordan away from the foyer and out of the Casino. taking the same path that we used when we entered the casino to respond to the call. At some point seeing that Franovich and Hillieard were tiring, I assisted them by supporting the weight of Jordan's legs. During the transport, we gave Jordan the opportunity to support his weight and walk, but he refused, and we had to continue to carry him

8. We told him several times throughout the transport to walk, but he refused. We placed Jordan on the floor of the casino several times to rest and renew our grip and to also allow Jordan to rest. We did not drop him onto the floor or allow his body to fall. When we carried Jordan down the escalator, we held him up to ensure that his head would not make contact with the escalator. While carrying him, we took precautions to keep his head from dragging or hitting the floor. Mr. Jordan's pants began coming down. We did nothing to make his pants come down. Efforts were made to try and get them back up.

9. At various times during the transport, Jordan moved his head and body, kicked his legs, and yelled. His kicking caused me to lose my grip several times.

10. Alyssa Jordan walked closely behind us and continually yelled at Jason Jordan. She approached the other officers and stood over Jason Jordan's legs and was told to step back. Mrs. Jordan was arrested, but I played no role whatsoever in her arrest, nor did ever speak to her.

11. On November 27, 2011, I did not go inside the Ledge nightclub. I did not see a wheelchair, and I was not offered the use of one at any time before or during the transport of Jason Jordan. We were not shown another route to take Mr. Jordan out of the Casino.

12. I did not know Jason or Alyssa Jordan prior to November 27, 2011. I did not know Alyssa Jordan was pregnant on November 27, 2011. I did not have feelings of ill will toward Alyssa or Jason Jordan. I did not have an intent to cause either one of them any harm. I was motivated to do my job as a law enforcement officer and enforce the laws and maintain order.

13. Our evaluation of the situation at the Hard Rock Casino as one that was uncertain and could turn dangerous influenced our response to get Jason Jordan out of the Casino quickly. We carried him because he refused to support his weight and walk. He was arrested for resisting arrest, disorderly conduct and public drunk as a result of his conduct.

14. I had no interaction with Christopher Soukup. He was not in the foyer when we arrived.

15. Further your Affiant saith not.

_____
JOSHUA HAMILTON

SWORN TO AND SUBSCRIBED BEFORE ME this the \_\_\_\_ day of August, 2014.

_____
NOTARY PUBLIC

My commission expires: (SEAL)

_____